Please rise. This court is now in session. Please be seated. Madam Clerk, please call the case. Case number 3-16-0382. Osvaldo Vesely M.D. Eppley v. Paul Whitgree v. Georgetown University Appellant by Daniel Kaufman May it please the court, opposing counsel, my name is Daniel Kaufman for Georgetown University along with my colleague Sarah Flatt. Your Honor, this appeal is quite simple. Illinois courts do not have personal jurisdiction over Georgetown, and keeping Georgetown in this case would violate its due process rights. There is overwhelming authority, uncontradicted by plaintiff, that out-of-state schools like Georgetown are not subject to general jurisdiction merely because they fund-raise and recruit in a particular state. That is all we have here, Georgetown fund-raising and recruiting in a particular state in Illinois. These activities are not enough to assert personal jurisdiction over Georgetown without violating Georgetown's due process rights. There is also no specific jurisdiction here because Dr. Kessler made the alleged affirmatory statements to the National Hemophilia Foundation in connection with his volunteer work for the Foundation, not in his capacity as an unpaid faculty member at Georgetown. There is no evidence that Georgetown had any affiliation with the Foundation, and there is no evidence that Georgetown had any right to control Dr. Kessler's volunteer work for the Foundation. In fact, Georgetown had none. Georgetown had no ties to the alleged malicious affirmatory statements that Dr. Kessler allegedly made to the Foundation. Finally, Georgetown's fund-raising and recruiting activities in this state do not rise to the level of doing business in Illinois. Doing business is a very high threshold, which essentially means that a non-resident corporation, or in this case Georgetown, has taken up residence in this state. That simply is not the case here. To briefly review the facts of the key facts of this case, this is a defamation case. The alleged affirmatory statements were made by Dr. Kessler to the National Hemophilia Foundation regarding plans qualifications for an award he received from the Foundation. Dr. Kessler is a board-certified doctor who volunteers for the Foundation, which is based in Illinois. At that point, these alleged affirmatory statements, did they occur during a fund-raising or recruitment activity by the University? Your Honor, there's no indication in the record at all that they occurred at all in connection with any activities taken on behalf of Georgetown in terms of fund-raising and recruiting. Instead, the record indicates that Dr. Kessler was engaged in these statements, made these statements in his capacity as a volunteer for the Foundation, which had no connection or affiliation with Georgetown. Did he identify himself as affiliated with Georgetown when these statements were allegedly made? The record does not indicate that he did so at all. He identified himself in any way with Georgetown at the time. The record just indicates that they were made to the Foundation and that he was acting as a volunteer for the Foundation. There's no connection in the record whatsoever between the alleged affirmatory statements. In fact, Georgetown had zero ties to those alleged affirmatory statements and Dr. Kessler's work for the Foundation. Dr. Kessler also holds, as Your Honor notes, referred to an unpaid faculty position with Georgetown, which is based in Washington, D.C., and plans to sue Dr. Kessler, the Foundation, Georgetown, and a variety of others based upon the alleged affirmatory statements by Dr. Kessler to the Foundation. This appeal allows only the very limited question of whether Illinois courts can assert personal jurisdiction over Washington, D.C.-based Georgetown. Turning to Georgetown's first argument, Your Honor, this case is just like the compelling decisions across this country which have uniformly held that out-of-state educational institutions are not subject to general jurisdiction simply because they recruit and fundraise in the form state, as Georgetown did in this case. Here, a claim places great weight on the fact that Georgetown enrolls and recruits students from Illinois, hosts fundraising events in Illinois, and has an alumni network in Illinois. Georgetown does not dispute any of these facts. However, Georgetown does dispute that these facts establish general jurisdiction. They simply do not. Courts across this country have addressed whether recruiting and fundraising activities like those that Georgetown engaged in here are enough to establish personal jurisdiction. The uniform holding is no. Those activities are not enough. I will highlight for your honor just a couple of decisions which cement the conclusion that general jurisdiction should not be exercised over Georgetown. In the 2015 decision of Faculty University of Duke, the Southern District of New York held, I quote, A university or college cannot be deemed a home in a form state merely because it engages in a sort of minimal and sporadic contact with the state that is common to all national universities. Likewise, in Isaacs v. Trustees of Dartmouth College, the Eastern District of Pennsylvania explained in 2014, quote, Like all national universities, Dartmouth College maintains some contacts with the state, including securities held by a bank headquartered in Pennsylvania, the recruiting of athletes and faculty living in the state, access to its website from within the state, and the admission and enrollment of students coming from the state. These de minimis contacts which any national university may have with the state of Pennsylvania are inadequate to establish general personal jurisdiction in this district. Your honors, it is telling that Plaintiff has not distinguished and cannot distinguish this case from the myriad cases cited in the briefs which support a finding that general jurisdiction does not exist here. What else is telling? Plaintiff does not offer a single case involving a university defendant where general jurisdiction has been found under facts similar to here. And even in cases where the contacts were far more extensive than those alleged here, courts unanimously have held and have declined to exercise general jurisdiction. For instance, in the American University case, the Texas court declined to exercise general jurisdiction even when the university held approximately 200 events in Texas, employed scores of people in Texas with Texas addresses, and entered into several contracts with Texas form selection clauses. Similarly, in Ross v. Creighton University, the Northern District of Illinois court declined to exercise general jurisdiction over a Nebraska-based Creighton University, even though Creighton employed a full-time recruiter in Illinois. Here, Plaintiff does not, because he cannot allege that Georgetown has a full-time recruiter in Illinois as in the Creighton-Ross case, or participated in 200 events as in the American University case. If the activities of those universities in those cases were not sufficient to establish general jurisdiction, there can be no doubt that general jurisdiction cannot be exercised here. Let's now turn to Georgetown's second argument that the court cannot exercise specific jurisdiction over Georgetown under 209A1 or 2 because no agent of Georgetown transacted business or commissioned a tort in Illinois. The key to this argument is control, or really Georgetown's lack of control, which is fed up to the agency relationship necessary for Illinois to assert specific jurisdiction over Georgetown. Specifically, the lack of control of Georgetown over here in D.C. fed over Dr. Kessler's work over here in Illinois, over the foundation. Again, the National Human Failure Foundation, to whom Dr. Kessler made the alleged defamatory statements. Plaintiff makes much of the fact that Georgetown requires faculty members to engage in service. But this argument is a red herring. Georgetown does not dispute that it requires its faculty members to engage in service. It certainly does, just like other universities. However, the fact that Georgetown requires faculty service has absolutely nothing to do with Georgetown's ability, or inability in this case, to control that service, particularly when the service is given, as it is here, to a foundation that has no affiliation with Georgetown. The test of agency is whether the alleged principal has the right to control the manner and method of the work that's done by the alleged agent. Applying that test in this case, the question is whether Georgetown, over here in D.C., had the right to control Dr. Kessler's volunteer work over here in Illinois for the foundation. The answer is a resounding no. Plaintiff never even attempts to argue that Georgetown had control over Dr. Kessler's work for the foundation. The foundation has nothing to do with Georgetown. As a result, Georgetown has no ability, right, or desire for that matter, to impact or control the work of the foundation's volunteers, such as Dr. Kessler. To the extent that Dr. Kessler made the alleged affirmatory statements, Your Honors, he did so as an agent of the foundation, not of Georgetown. Again, while plaintiff makes much of Georgetown's service requirement, that requirement is irrelevant. It has absolutely nothing to do with Georgetown's ability to control Dr. Kessler's work for an organization, the foundation, that is completely separate and apart from Georgetown. Georgetown had no right to or ability and did not control Dr. Kessler's volunteer activities with the foundation. Because Dr. Kessler was not an agent of Georgetown at the time he made the alleged affirmatory statements, it is not necessary to even get into an analysis of whether Dr. Kessler was acting within the scope of his employment with Georgetown. Suffice it to say that Dr. Kessler, if he maliciously defamed the plaintiff, as plaintiff alleges, then he was not acting in Georgetown's interest as required to be within an agency relationship. Now, plaintiff will likely try to distract the court with discussions of scope and responding at superior. But the bottom line is this, plaintiff cannot even get to that analysis because he cannot get over the initial hurdle that Dr. Kessler was not a Georgetown agent at the time of the alleged affirmatory statements to the foundation. Turning to Georgetown's third and final argument for reversal, the law and facts in this case make clear. The Illinois courts also cannot exercise jurisdiction over Georgetown under Section 209b-4 because Georgetown was not doing business in Illinois. Under the doing business theory, a corporation becomes subject to a state's jurisdiction if a corporation engages in a continuous and systematic course of business in the state. Again, this doing business threshold and standard is very high. It requires a non-resident corporation to carry on its business in Illinois, not casually or occasionally or sporadically, but with a measure of permanence and continuity. This requirement means that effectively the corporation, the foreign corporation, is taking up residence in this state. Here, there are no facts to support a claim that Georgetown was doing business in Illinois for purposes of establishing jurisdiction under Section 209b-4. To the contrary, Georgetown is located in Washington, D.C. It has no campuses or offices in Illinois. It is not registered to do business in Illinois. It is not registered as a charitable organization in Illinois. And it does not maintain an agent for service of process in Illinois. Given these indisputable facts, there is no basis to find that Georgetown carried on business in Illinois with the measure of permanence and continuity required to exercise jurisdiction over Georgetown under Section 209b-4. Your Honors, this definition action simply did not arise out of or relate to any context that Georgetown had with Illinois. For these reasons, Your Honors, we respectfully request this Court reverse the lower court and find that personal jurisdiction does not exist over Washington, D.C.-based Georgetown. Thank you. My name is Paul Vickery. I represent Dr. Oswaldo Wesley. Dr. Kessler repeatedly and continuously identified himself as Section Chief of Hematology at Georgetown. Now, and we maintain that his conduct was motivated, at least in part, by a purpose to further the objective of Georgetown. He was required under the faculty handbook to engage in these kinds of activities. According to Georgetown, this is done to advance the good of the entire university. This is not something that is just a frolic and detour on Dr. Kessler's part. The university requires him to, quote, belong to and participate in the affairs of the important professional and educational associations and societies in their respective fields. That's a requirement. Let me just ask you, doesn't virtually every major business, including hospitals and corporations, have similar type things? They might encourage that, Your Honor, but this is the first time I've seen an actual requirement, an actual faculty requirement that they engage in this. And they go on to say, and this is addressing control, no advanced review is required for the activities of this type so long as they do not conflict with other faculty duties. They have the right to step in if they see a conflict. What's interesting about this particular organization, about advancing the good of the university and they're expected to be involved in important professional and educational associations, they're just not a more important organization for blood disorders than the National Hemophilia Foundation. This is the key foundation for blood disorders. And why do they rely on somebody like Dr. Kessler? Because he identifies as the head, section chief of hematology at Georgetown. And in fact, the procedural aspect of this case is somewhat unusual because we had to solicit, ask for, and obtain pre-suit discovery from the National Hemophilia Foundation to say, where did you get this information? Who told you this? They came back, and this is very telling, and this is at page three of our brief. They said, well, we got it from Dr. Kessler, and they identified him not as a former board member of the National Hemophilia Foundation. They identified him as, quote, professor of medicine and pathology, section chief of hematology, Georgetown University. Because that's how he always identifies himself. That's how Georgetown identifies him on the Georgetown official website. Do we have a copy of the correspondence? Your Honor, that's a very good point. Because of the procedural stance of this case, we didn't obtain the actual e-mails until after the court found there was jurisdiction. But at pages C202 to 209 of our supplemental appendix, some of that correspondence is there. We don't have the actual statement from Dr. Kessler to the National Hemophilia Foundation, but he did say he was using his Georgetown University e-mail address, and he did say, he did represent one of the other defendants, that he was going to go to the National Hemophilia Foundation and tell them to revoke the award because of fraudulent credentials by my client. So he was not only doing this as the section chief of hematology at Georgetown, he specifically identified himself while he was engaging in the tortious activity as a member of the Georgetown faculty, using the Georgetown e-mail address to get across his point. And that's important because he was such a prominent guy at Georgetown. This is not some guy off the street who's got a beef against my client. This is one of the head guys ever in this field. So that's why it carries so much weight, and that's why immediately they send out this e-mail blast saying, wait a minute, hold your horses, we're looking into this. It looks like there could be fraud. And this is picked up by the Peoria news stations. My client loses his job. It's been a complete nightmare. And for them to say, well, this is some sort of frolicking detour by some guy we don't really know. No, they know him. He's the head of the section. And they encourage him, they require him to engage in these kinds of activities. And then when they do that, they can't turn around and say, well, we didn't know anything about this. Well, that's a whole different thing from saying that there's an agency relationship when he's volunteering with this group and that he's acting as the agent of the hospital when he's communicating with this volunteer outfit. For example, you know, you mentioned the conflict situation. I mean, doesn't that, what you read to us, I mean, in a nutshell, what that says is we want you to volunteer and you've got to go do that, but you've still got to show up at work and do your job here. So you can't say, sorry, I can't show up today at work because I'm not a volunteer. Understood, Your Honor, but at least at this stage I think that's a question of fact because he understood that he was acting not only on behalf of Georgetown but also to achieve some other purpose. And whether there is a dual purpose or the facts suggest a dual purpose, because remember, his prominence within this organization rubs off on Georgetown as Georgetown recognizes. So when there is a dual purpose, we have jurisdiction, we have agency. And as you point out in the case law, normally that's a question for the jury. Where we have made out, we believe, a prima facie case where there was agency, it was within the scope of his employment, it was within the scope of his required duties as a section head, section chief at Georgetown to engage in, to belong to this very organization, the premier organization in the country on blood disorders. Did they say you had to belong to the National Hemophilia Foundation? No, but what they specifically said was all faculty members are expected to belong to and participate in the affairs of the important and professional education associations in their respective fields. You can't get any more important in this field than this organization. And I would expect that further discovery would show that they not only promoted, expected but promoted his involvement with this organization in their own promotional materials. But we believe that we've made out a prima facie case, and under these particular circumstances the case should proceed. On general jurisdiction, we believe that the court was correct on specific jurisdiction, but this is an unusual situation in general jurisdiction because their own case even says that just general recruiting, that sort of thing, if it touches various states, that's not enough. It's only where you, I believe the language is target. And that's in the Gallant case. And in that case, again, relied on by Georgetown, it's a different story if there's evidence suggesting that the university or employees have singled out a state as opposed to generally participating in interstate academic activities. They have targeted Chicago as a base of operations. They routinely come in and visit Illinois, Champaign, Chicago. They encourage recruiting activity, fundraising activities. They specifically state on their website how important the city club is to Chicago. They have an employee whose apparent full-time address is in Illinois. So this is different than the normal just generic recruiting and sending out blasts to states across the country. They made Illinois a specific focus of their activities. And that's why we believe that this blanket immunity doesn't apply to Georgetown. But that's a secondary argument. Our primary argument relies on Calderby Jones where the U.S. Supreme Court held that an article in Florida targeting somebody in Illinois, I mean in California, was sufficient to impress specific jurisdiction. The court noted. Okay, can I ask you to pause there? So you're drawing an analogy by saying an email is sufficient to target specific? Absolutely, because they knew by the email saying that this guy falsified his credentials and I'm going to get them to withdraw the award, which happens in a very public way. It goes on their website. It goes out to 5,000 email recipients who belong to the National Hemophilia Foundation. Absolutely. The same thing with the Tamburo case, where the 7th Circuit. That's the association's website. Correct. Correct. But that's exactly what he intended. I mean, when he engaged in defamation, he did that. And by the way, the emails referenced at C-202-209 indicate that Dr. Kessler was well aware of the Illinois impact and that Dr. Wesley, my client, was based in Illinois. Those are great arguments with respect to personal jurisdiction over Dr. Kessler in Illinois. But again, I'm not certain how that affects the – because I don't think anybody's here arguing about whether Illinois has jurisdiction over Kessler. Okay. We're talking about Georgetown. Well, Your Honor, again, at this stage of the litigation, we believe that we have made a prima facie showing of jurisdiction where he has continually touted his stature as the section head of hematology at Georgetown. That goes with his name every time that he engages in a speaking discussion, any time he's sending out an email, and when he's using university facilities, including the university email system and university email address, that suggests university business, not personal business. We all have seen situations where we don't want to mix up official business with personal business. We could have a Gmail account, for example, when we're doing something off-company time. That's not what he did here. And that's one of the reasons why his word carried so much weight and why they jumped when he said jump, because of his stature and because of his association with Georgetown. So any professor at any university who gives a lecture in any state subjects the university to the jurisdiction? Absolutely not, Your Honor. This is a unique circumstance where he's the section head. He touts that in all of his dealings. Did he tout it in this email? I believe in this particular – no, but she identified herself in this position. Yes. And from page 202 through 209, you see that there? No, that's his Georgetown University email address. But the NHF, when they were asked who he is, they said, well, he's the section chief of Georgetown, because that's repeatedly what he calls himself. Well, that's what he is. And if he didn't call himself that, the National Hemophilia Association would know, probably, that he was indeed the section chief of hemophilia at Georgetown. The fact that the association knows who Kessler is. Well, but when the university, respectfully, requires him to be an active participant in the most important organizations in your field, which is exactly what he was doing, and his faculty reviews, as we pointed out in the faculty handbook, his faculty reviews are dependent on his participation in those activities. In other words, he advances or doesn't, depending on what he does outside of the university to advance. And they say it's a shared interest. When you're doing these things, you are advancing the name of Georgetown. And do you think that they, in any realm, that Georgetown figured that part of his duties was to go out and slander people? Well, your honor, that sort of tension exists in any sort of intentional tort situation. Where the activities that he's engaging in, in other words, engaging in this dialogue with his organization, and he crosses the line, if he's acting in a dual purpose, yes, absolutely, they're liable. Two minutes, counsel. Any further questions? Thank you, counsel. Thank you. Counsel. Thank you, your honors. I just want to address several arguments that Plante's counsel made that we believe are flawed. Plante makes much of the fact that Georgetown has this requirement of service, and we don't dispute that. Georgetown doesn't dispute that. But like every national university, it requires service, and Georgetown does dispute the requirement that service has anything to do with Georgetown's ability to control Dr. Kessler's volunteer activities, in this case, the National Human Affiliate Foundation. It doesn't matter how important the foundation is, as Plante's counsel argued, or how important Dr. Kessler is. What matters is that this foundation is separated apart completely from Georgetown and completely unaffiliated with Georgetown. Again, the key, as I think your honor was indicating, to establishing an agency relationship is control. And in this case, Georgetown simply had no ability to control Dr. Kessler's volunteer activities for the foundation. And Plante doesn't attempt to really argue that Georgetown had any ability to control it. An email certainly doesn't establish control or a service requirement. The email itself is not a sufficient condition to establish that there's a control necessary to establish an agency relationship. And Plante seems to try to equate mere service requirement with control, and that's not the standard to establish an agency relationship. Plante also made much of the fact that Dr. Kessler just identifies himself with Georgetown, and this is not compelling for a couple of reasons. One, again, the test for agency is not how Dr. Kessler identifies himself or represents himself. It takes more than that to establish an agency relationship, and there's no evidence in the record to establish that the defamatory statements identify Dr. Kessler as an agent of Georgetown. Similarly, the due process rather than dual purpose analysis relates to an agent acting for his own interest and for the purpose of a master, in this case the foundation. Dual purpose analysis does not relate to interest of two entities, as Plante suggests. Again, it relates to the interest of a master and a servant, not dual entities. I'd also like to address the argument that Plante made related to the Tambaro case and the Calder versus Jones case. Plante argues that the test for a specific jurisdiction is whether the defendant purposely directed activities or targeted Illinois, but the argument based on Tambaro and Calder is flawed for a couple of reasons. First of all, in the Calder case, it involved a publisher of a magazine, a president of a magazine, and a reporter, and the court didn't even get into whether it was an agency relationship because there was there a direct relationship, unlike in this case where we don't even have an agency relationship between Georgetown and Dr. Kessler. The Tambaro case is also distinguishable because, like Calder, Tambaro is not a university case. Calder is not a university case either, and therefore those cases cannot override the instructive cases across this country cited in our briefs, which are far more compelling to this case. Second, even if Tambaro were instructive, the court did not, in that case, did not analyze whether any of the individual defendants acted as agents. In fact, the court in Tambaro actually dismissed the case against the corporate defendant for lack of personal jurisdiction and actually found there was no general jurisdiction over any of the defendants. And here the facts are far more attenuated than in Tambaro. Here we have Dr. Kessler made the statements as a volunteer to an entity that was wholly separate and apart from Georgetown, which was the foundation. In Tambaro, there was no such third entity as the foundation is here. Now, Plano now states it targeted Illinois because Dr. Kessler sent, he targeted Illinois because he sent a defamatory email to Illinois, but this argument is even more attenuated than the arguments that Plano makes in his brief, which, again, just explained are flawed for multiple reasons. Plano also makes much of the fact that Dr. Kessler was just identified by a foundation in his discovery responses, but, again, this is not compelling. First, just merely identifying one as an individual is not proof of any agency relationship. One minute, please. Finally, all the factors that this court should consider related to due process weigh heavily against the notion that there's any personal jurisdiction over Georgetown. Georgetown simply did not have the minimum contacts necessary, such that it would have fair warning that it could be held into a court in Illinois based on some alleged malicious defamatory statements that Dr. Kessler made to the foundation. This action does not arise out of any, relates to any contacts that Georgetown or its alleged agent had with Illinois, and it's simply not reasonable to require Georgetown to litigate in Illinois. Doing so would change the legal landscape with varying universities across the country. It would be extremely onerous and burdensome to, in fact, subject universities around the country to jurisdiction in every state, or almost every state in which they recruit and fundraise and engage in activities like Georgetown did in this case. For all these reasons, Your Honors, and for those in our set forth in our briefs, we respectfully request that this court reverse the decision of the lower court and find that there is no personal jurisdiction over Georgetown in this case. Thank you. Thank you, Counselor. The court will take the matter under advisement and take a break now for a panel change. And then we will come out in a few minutes. Thank you.